1                  UNITED STATES DISTRICT COURT

2                   DISTRICT OF MASSACHUSETTS

3                              No. 1:13-cr-10164-WGY-ALL

4

5

6   UNITED STATES OF AMERICA

7

    vs.

8

9   MICHAEL BOURQUE, et al

10

11

12                      * * * * * * * * *

13

14                    For Hearing Before:
                      Judge William G. Young

15

16                      Status Conference

17

18                  United States District Court
                    District of Massachusetts (Boston)
                    One Courthouse Way

19                  Boston, Massachusetts 02210
                    Thursday, February 6, 2014

20

21                      * * * * * * * *

22

23            REPORTER: RICHARD H. ROMANOW, RPR
                    Official Court Reporter

24            United States District Court
       One Courthouse Way, Room 5510, Boston, MA 02210
                    bulldog@richromanow.com

25

```
 1                     A P P E A R A N C E S

 2   MICHAEL I. YOON, ESQ.
         United States Attorney's Office
 3       J. Joseph Moakley U.S. Courthouse
         1 Courthouse Way, Suite 9200
 4       Boston, Massachusetts 02210
         (617) 748-3180
 5       Email: michael.yoon2@usdoj.gov
         For the United States
 6
     WILLIAM H. CONNOLLY, ESQ.
 7       20 Park Plaza, Suite 1000
         Boston, MA 02210
 8       Email: Whc@williamconnollylaw.com
         For Michael Bourque
 9
     JOHN G. SWOMLEY, ESQ.
10       Swomley & Tennen, LLP
         227 Lewis Wharf
11       Boston, Massachusetts 02110-3927
         Email: Jswomley@swomleyandtennen.com
12       For Robert Hagenaars

13   JOHN F. PALMER, ESQ.
         Seven Faneuil Hall Marketplace, North Bldg., 3rd Floor
14       Boston, Massachusetts 02109
         Email: Jpalmer@socialaw.com
15       For Brian Chisholm

16   DEREGE B. DEMISSIE, ESQ.
         Demissie & Church
17       929 Mass. Ave., Suite 01
         Cambridge, Massachusetts 02139
18       Email: Dd@demissiechurch.com
         For Phillip Goolst
19
     E. PETER PARKER, ESQ.
20       151 Merrimac Street
         Boston, Massachusetts 02114
21       Email: Peter@parkerslaw.com
         For Frank McGuire
22
     LESLIE FELDMAN-RUMPLER, ESQ.
23       101 Tremont Street, Suite 708
         Boston, Massachusetts 02108
24       Email: Lfedlmanr@aol.com
         For Michael Roy
25
```

```
 1          (Continued.)

 2   LIAM D. SCULLY, ESQ.
         101 Summer Street, Fourth Floor
 3       Boston, MA 02110
         Email: Liamdscully@aol.com
 4       For Sean Cotter

 5   DAVID J. APFEL, ESQ.
     ROBIN SCHWARTZ, ESQ.
 6       Goodwin Procter, LLP
         Exchange Place, 53 State Street
 7       Boston, Massachusetts 02109
         Email: Dapfel@goodwinprocter.com
 8       For Mark Newton

 9   EDWARD J. McCORMICK, ESQ.
         McCormick & Maitland
10       195 Main Street, Suite Six - Hayward Manor
         Franklin, Massachusetts 02038
11       Email: Ejmccormick3@verizon.net
         For John Kinney
12
     DEVIN W. McBRIDE, ESQ.
13       One International Place, Suite 1820
         Boston, Massachusetts 02110
14       Email: Dvnmcbride33@gmail.ocm
         For Raymond Panaggio
15
      JAMES H. BUDREAU, ESQ.
16       Law Office of James H. Budreau
         20 Park Plaza, Suite 1405
17       Boston, Massachusetts 02116
         Email: Jamesbudreau@gmail.com
18       For Corey Assencoa

19    JOHN M. DOMBROWSKI, ESQ.
         Dombrowski & Aveni
20       6 Grove Avenue
         Leominster, Massachusetts 01453-3324
21       Email: Johnmdombrowski@yahoo.com
         For Mark Ouellette
22

23

24

25
```

```
 1                    P R O C E E D I N G S
 2                    (Begins, 3:00 p.m.)
 3                    THE CLERK:  Now hearing Criminal Matter
 4          13-10164, The United States of America versus Bourque,
 5          et al.
 6                    THE COURT:  Good afternoon.  With Mr. Romanow
 7          here, I think it might be helpful if we all introduced
 8          ourselves again, starting with the government.
 9                    MR. YOON:  Good afternoon, your Honor.
10          Michael Yoon for the Government.
11                    THE COURT:  And who you represent.
12                    MR. McCORMICK:  Good afternoon, your Honor,
13          Edward McCormick representing John Kinney and standing
14          in for Attorney Robert Griffin as well today.
15                    THE COURT:  Who represents -- Mr. Griffin
16          represents?
17                    MR. McCORMICK:  Mr. Yancey, your Honor.
18                    MR. YOON:  Mr. Yancey.
19                    THE COURT:  Then Mr. Yancey.  Thank you.
20                    MR. McBRIDE:  Good afternoon, Your Honor,
21          Devin McBride on behalf of Mr. Raymond Panaggio, who is
22          present, and I'm standing in for William Korman.
23                    THE COURT:  Who represents?
24                    MR. McBRIDE:  Who represents Tom Ehwa.
25                    THE COURT:  Thank you.
```

 1          MR. BUDREAU:  And, your Honor, James Budreau

 2     on behalf of Corey Assencoa.

 3          THE COURT:  The second row?

 4          MR. SWOMLEY:  Thomas Swomley on behalf of

 5     Robert Hagenaars.

 6          MR. DEMISSIE:  Derege Demissie, I represent

 7     Philip Goolst.  I'm also standing in for Attorney Kevin

 8     Barron, who represents Mr. Akasa.

 9          THE COURT:  Thank you.

10          MR. DOMBROWSKI:  Good afternoon, your Honor,

11     John Dombrowski, representing Mark Ouellette.

12          MR. APFEL:  Good afternoon, your Honor, David

13     Apfel, and with me is Robyn Schwartz from my office on

14     behalf of Mark Newton.

15          MR. PARKER:  Peter Parker for Frank McGuire.

16     Good afternoon, your Honor.

17          THE COURT:  And we'll go around the outer ring

18     here.  Oh, you're at a table, yes, of course.

19          MS. FELDMAN-RUMPLER:  Leslie Feldman-Rumpler.

20     Good afternoon, your Honor.  On behalf of Michael Roy.

21          THE COURT:  Thank you.

22          MR. SCULLY:  Good afternoon, your Honor, Liam

23     Scully for Sean Cotter.

24          MR. PALMER:  John F. Palmer for Brian

25     Chisholm.  Good afternoon, your Honor.

1          MR. CONNOLLY:  Good afternoon, your Honor,

2    Bill Connolly for Michael Bourque.

3          THE COURT:  Well, thank you for attending on

4    this session.  You filed this motion.  The motion for a

5    status conference makes perfect sense.  The motion to

6    continue the trial, I am considerably less receptive

7    to.  But let's work through step by step.

8        First, there is a not insignificant motion to

9    suppress that many of you join in.  And let's have the

10   clerk suggest a prompt time for the hearing of that

11   motion.  I see no need to have an evidentiary hearing.

12   The matters all seem to be straightforward.  And the

13   question is the implications of the statute in light of

14   the undisputed facts as to what happened.

15         THE CLERK:  Friday, February 14th at 9:00 a.m.

16         THE COURT:  How is that?  Is that --

17       You're going to argue it, Mr. Apfel?

18         MR. APFEL:  I am, your Honor.  That date is

19   fine.

20         THE COURT:  Fine.  And, Mr. Yoon, that's all

21   right with you?

22         MR. YOON:  Yes, sir, of course.

23         THE COURT:  All right.  So that's when we'll

24   hear that.  That may require an opinion, but I believe

25   that I will be able to rule on the matter promptly.

1      So if I grant the motion, um, we probably won't

2   have to worry about whether I'll continue the trial

3   because the government will appeal.  If I -- well, I'm

4   not inviting it, but if I deny the motion, then let's

5   consider where we stand.

6      Now, one thing that was said in this motion that I

7   frankly don't understand, um, and I'll read it:  "Others

8   are prepared to plea but will require evidentiary

9   hearings on the issues of drug quantity and sentencing

10  enhancements."  Now, I don't understand that for this

11  reason.

12      Surely the government understands, and the rest of

13  you all should understand, that, um, my interpretation

14  of the Constitution is that any of these, quote,

15  "sentencing enhancements," save for prior convictions,

16  criminal history, the government is going to have to

17  prove those and the government is going to have to prove

18  those at the time of trial to the jury with evidence on

19  proof beyond a reasonable doubt.

20      So I don't -- I can conceive of the situation --

21  actually Ms. Feldman-Rumpler and I had a case where it

22  didn't actually eventuate this way, but one of the

23  things I'm willing to do is take a plea and, in essence,

24  hold a jury-waived hearing on just these matters, take

25  evidence at that hearing, hold the government to its

 1    burden of proof unless the defendant agrees that it can

 2    be a lesser burden of proof, um, and then figure out how

 3    the discount for saving the government time and money

 4    works into the procedure.  But if we're going to go to

 5    trial, the government is going to prove everything.

 6    Everything.  No one is going to be sentenced beyond what

 7    they either admit in a plea or is proved at the trial.

 8         Now, Mr. Yoon, you understand that?

 9              MR. YOON:  Yes, sir, of course.

10              THE COURT:  Of course.  So why -- so what are

11    we talking about here, what sort of evidentiary hearings

12    are we talking about other than trial?

13              (Pause.)

14              THE COURT:  I hear none.  All right.

15              MR. CONNOLLY:  Your Honor, I'll address it

16    just because I filed the motion.  I don't anticipate a

17    trial at this point, but I think that raises one of the

18    issues that the lawyers wanted to address with the

19    Court, and that is if an individual chooses to plead

20    guilty to the substantive offense but wants a jury to

21    hear evidence and demand proof beyond a reasonable doubt

22    on the enhancements, how does that trial look?  And

23    secondly --

24              THE COURT:  An excellent question that

25    deserves an answer.  That trial looks like this.  I'm

1  going to assume everyone is going to trial.  Well, one

2  can, based on this, assume that not everyone will go

3  trial.  At the moment it's a joint trial.  So if someone

4  pleads, that's got to be a separate proceeding.  I'll

5  give a separate jury trial, the jury will know that the

6  elements have been established because they have been,

7  and the question is what's attributable to him?  That's

8  the one -- there may be other enhancements, but maybe

9  there's a weapon or something.

10        We have the trial.  If it results in an acquittal,

11  again, evidence, proof beyond a reasonable doubt, if it

12  results in an acquittal as to those enhancements, I

13  don't consider them at all in sentencing.  If there is a

14  range and I give the jury a verdict that has the various

15  ranges and the jury checks it off, the one that has been

16  proved, I've done that, then I sentence in accordance

17  with the jury verdict.

18        What's in play though is the discount.  If someone

19  puts the government to their proof, which is their

20  constitutional right, then there may not be a

21  three-level or a two-level discount, because we've spent

22  the time proving something the government claims that it

23  can prove.  However, when I say the discount's in play,

24  go to trial like that and it results in a defendant's

25  verdict as to the enhancement, then the discount as to

 1    the plea stands, because they've pled.  That's my answer

 2    to the question.

 3         So if you want that, I'm amenable to that, and

 4    that will be a separate proceeding.  Um --

 5              MR. SWOMLEY:  Could I ask a question, your

 6    Honor?

 7              THE COURT:  Yes, please.

 8              MR. SWOMLEY:  Just in terms of the difference

 9    between a plea and a jury-waived trial, what you're

10    saying is, um, distinguishing what you just said from

11    that scenario, if there was a plea --

12              THE COURT:  I can do the same thing

13    jury-waived.

14              MR. SWOMLEY:  But if it's jury waived, would

15    you be providing the discount, as it were, regardless?

16              THE COURT:  I would hear arguments on that,

17    but I think the discount is measured by the time and

18    expense to the government.  It cannot in any way, um, be

19    evaluated by the, um, resources of the Court, because

20    otherwise it would infringe on constitutional rights.

21    The only way the discount -- I'm very skeptical of it.

22    I'm so careful never to use the term "acceptance of

23    responsibility."  You all know it.  The government knows

24    it.  It's not people genuinely accepting responsibility,

25    it's their bargaining out for the best they can get, and

1  then I'll listen to their allocution and make individual

2  determinations.  And so it's got to be -- the only way

3  that can be constitutional is to spare the government

4  the burden and expense of a trial.

5         My job is to do the judicial work, day in and day

6  out.  So it's not my time that has any bearing on

7  sentencing whatsoever, it's the government's time.

8              MR. SWOMLEY:  Thank you.

9              THE COURT:  Good question.

10        Yes, Mr. Apfel.

11             MR. APFEL:  Your Honor, just a point of

12  clarification.  I'm not sure I understand, so I just

13  want to make sure that we're all on the same page.  It's

14  clear that if people go to trial, trial, no discount

15  whatsoever?

16             THE COURT:  I can't recall -- actually the way

17  the guidelines are written, conceivably there could be

18  one.  I never bargained, but as I recall my own

19  practices, as a matter of historic fact, I don't ever

20  recall giving it after a trial.

21             MR. APFEL:  If an individual pleads, however,

22  but still maintains the right to contest drug weight or

23  drug quantity, um, it's obviously the government's

24  prerogative as to whether or not the person gets the

25  third point for a discount, but the first two points on

1    a discount I would think that the individual who pleads

2    would get those two points even if he goes forward.

3            THE COURT:  I'm happy to hear that.  I am not

4    clear on that.  If he goes forward and we spend three

5    days on doing drug weight.

6            MR. APFEL:  But it's three days on drug weight

7    as opposed to what might be five days or three weeks in

8    --

9            THE COURT:  I'll hear all of those things in

10   an adversary presentation.  And your question is a good

11   one and I'm trying to be transparent.  But while I'm

12   confident to the extent of answering the first two

13   questions, I'm not estopped in answering your question,

14   because you're telling me I've got to give the two?

15   Well, if we spend three days and they come up with a

16   drug weight that the government intended at the

17   beginning and you say, "Well, he still gets the two

18   levels," don't assume that I have reached that

19   conclusion, or the opposite conclusion.

20           MR. APFEL:  Understood.

21       Even in the context of a plea --

22           THE COURT:  Correct.

23           MR. APFEL:  -- a signed plea agreement with

24   the government --

25           THE COURT:  Correct.

1          MR. APFEL:  -- in which the government has

2    agreed to the 2-point discount?

3          THE COURT:  You're asking precise questions to

4    which I do not have precise answers and I leave it to

5    the adversary system.  Where I have an answer, I'm happy

6    to share it.

7       Are there other questions?  All right.  I see --

8          MR. PALMER:  I'm sorry.  What is the Court's

9    position on C-pleas?

10          THE COURT:  I take C-pleas.  There was a time

11   when I didn't.  I now take them except for -- and again

12   I shouldn't be so firm, but I've now written how

13   skeptical I am of taking them with corporate

14   defendants.  But that has nothing to do with this case.

15          MR. PALMER:  Thank you.

16          THE COURT:  I took one as recently as this

17   morning and of course the issue is am I ultimately going

18   to accept it?  And now close on 30 years, if my memory

19   serves, I've rejected it twice.  I just wouldn't go

20   along with it.  But the great majority of C-pleas, where

21   they are negotiated after I've read the presentence

22   report, ultimately I've accepted.  I'm just talking

23   historically.

24       All right.  I see no reason to continue the

25   trial.  I expect you all to do the job once we've had

1    the hearing on the 14th.  We'll figure out a final

2    pretrial conference.  As a matter of fact --

3    Mr. Parker?

4              MR. PARKER:  Your Honor, I took the short

5    straw of arguing the motion and I don't think the Court

6    is aware, um, but the lead defendant, Bourque, um, just

7    cooperated.  We just learned about it this week.  We

8    don't even have a plea agreement, an outline.  We have

9    nothing about what he said.  Um, Mr. Connolly

10   represented him.  You know, if he was going to trial, we

11   expected him to be lead counsel, more or less in this

12   case, and carry the ball and do the heavy work.  He's

13   not going to be doing that.  That may or may not fall on

14   me given the government's view of where my client is in

15   the hierarchy.

16        We have a lot of work to do if we are to digest

17   what Bourque has to say, compare it to wiretaps,

18   investigate him, and be in a position to cross-examine

19   him.  I've tried cases with your Honor before, your

20   Honor knows, I hope, how thorough I prepare and how much

21   I dig into this.  If we found out about it or if it

22   happened months ago, I'd be ready for trial.  I can't be

23   ready for trial with Bourque as the government witness.

24             THE COURT:  I think it's too early to draw

25   that conclusion.  Let's hold off till after we've had

1    the motion to suppress on the 14th.  Let's have the --

2    why don't we do the final pretrial conference on that

3    day as well and I'll entertain it, then we'll know a

4    little more about this situation and I can rule in a

5    more prudential way.  I do hear you, Mr. Parker.

6            So shall we do the final pretrial conference at --

7    do you all expect to come for this motion to suppress

8    hearing or should we put that on for 2:00 that day?

9                    MR. DEMISSIE:  I'll be here.

10                   THE COURT:  What's your preference?

11                   MR. DEMISSIE:  To be present.

12                   THE COURT:  Wait a minute.

13                   (Pause.)

14                   THE COURT:  Oh, it won't work at 2:00.  So

15   shall we say we'll have the hearing on the motion to

16   suppress and after that we'll go right into a final

17   pretrial conference?  All right.  And I'll entertain

18   motions at the time.

19                   MR. DEMISSIE:  What time is that, Judge?

20                   THE COURT:  9:00.

21                   MR. SWOMLEY:  Your Honor, I had represented

22   the last time we were in front of you that I am

23   scheduled to start a murder trial on March 3rd, the same

24   day that you scheduled this.  That is still the case.  I

25   may be out of this case before then, but I just wanted

1    to let the Court know.

2              THE COURT:  Your candor is always appreciated,

3    but for now we'll run for luck and see where we stand.

4         Now, I have -- Mr. Apfel?

5              MR. APFEL:  One other -- two issues on the

6    issuance of a continuance, your Honor.  In -- one is

7    that there is still, at least as to my client, some

8    important outstanding discovery independent of the

9    information related to the recent discovery that we've

10   all had where Mr. Bourque is cooperating.

11        Mr. Yoon tells me that the discovery I've been

12   asking for will be in my hands no later than tomorrow.

13   That should obviate that problem.  But if it's not,

14   that's an issue for us.

15        The second is a -- is in the nature of a personal

16   plea.  I did not attend the last status conference and I

17   inexcusably didn't have one of my associates attend it

18   either, I had someone stand in for me.  If I had

19   attended, I would have explained to your Honor that

20   March 3rd would not be a great date for me in the event

21   that the trial goes past two weeks, and that's because I

22   have a longstanding obligation to take my wife to Europe

23   on March 14th for her 60th birthday that has been

24   planned for over six months now.  And I think that if I

25   miss that date, it would be on pains and penalty of

1    divorce.

2           THE COURT:  We will run for luck, Mr. Apfel.

3           MR. APFEL:  I thought that would be your

4    response.

5           THE COURT:  Right.  We will see how it works

6    out.

7           Now, I have a couple of questions.  The

8    defendants, as is their right, filed various things ex

9    parte and I don't think I'm revealing anything to ask

10   the government a couple of questions.  And again this

11   may be -- it would be helpful to me and that's

12   sufficient.

13          Certain of these defendants are worried about you

14   calling experts and the experts that they suggest that

15   you may call are some expert or experts who are going

16   to, um -- because this appears to be a wiretap case and

17   people are talking in code words, and they think you

18   have someone -- now I guess they've got Bourque, so

19   maybe that will solve it, but someone is going to

20   de-code the code, is that so?

21          MR. YOON:  There won't be expert testimony.

22   We will not be looking to enter that.  We'll do that in

23   another way.  But it won't be expert testimony.

24          THE COURT:  It won't be expert testimony?

25          MR. YOON:  No, your Honor.

1              THE COURT:  I mean you'll have someone who
2   knows decipher the code?
3              MR. YOON:  Yes, your Honor.
4              THE COURT:  Another thing they're worried
5   about is you're going to put on some expert as to the
6   street value of the drugs promised or involved?
7              MR. YOON:  No.
8              THE COURT:  Maybe you're not and these answers
9   will be sufficient to aid me.
10             MR. YOON:  No, your Honor.
11             THE COURT:  You're not.  Good.  Thank you.
12         Well, those are my questions.  We'll meet on -- at
13   9:00 on the 14th of February.  We'll start with the, um,
14   motion to suppress.  We'll go on to a final pretrial
15   conference.
16         Should there be resolution of any of these cases,
17   in whole or now that, as the question's raised, in part,
18   simply call Ms. Gaudet and it will aid all of us if I
19   set it up promptly, and I will do the very best I can
20   promptly to entertain it.
21             MR. APFEL:  One other question, your Honor.
22             THE COURT:  Right.
23             MR. APFEL:  I guess I think the question that
24   you just put to Mr. Yoon was prompted, at least in part,
25   by an ex parte motion on my part.

1           THE COURT:  I didn't say that.

2           MR. APFEL:  And I don't know if others filed

3     similar motions, but I know I filed one that raises

4     those issues.  So I would ask your Honor to put one

5     additional question to Mr. Yoon.

6         If he doesn't intend to call any experts on the

7     issue of the codes or the meaning of code words or

8     street value of drugs, does he intend to have the

9     agents, the case agents, whether they're labeled as

10    experts or not, offer interpretative testimony as to --

11          THE COURT:  I'm not going to ask him that

12    question.  People are entitled to prepare their case.

13    You know that I will be extraordinarily skeptical of

14    anyone trying to put in backdoor expert testimony,

15    interpretative testimony.  I'm very hostile to such

16    testimony.  If he has any witness, government or

17    otherwise, who has primary knowledge -- I just give some

18    examples.  If there's an informant here and that

19    informant was in on the deal and knew how much to supply

20    or how much to pay based upon such-and-such a code, that

21    decodes that part of the code.  If they're fronting

22    money for controlled buys and it's in the area within a

23    year, it sounds to me like that's primary evidence of

24    the street value of x amount of y.  And witnesses who

25    themselves observe it or front the money are able to

 1    testify to what they did.

 2          I should not give advisory opinions and this does

 3    not foreclose anyone from doing anything that the rules

 4    allow.  But I hope that's helpful.

 5          We'll recess and we'll resume on the 14th.

 6               (Pause.)

 7               THE COURT:  Oh, before you leave, wait a

 8    minute.  Ms. Gaudet properly raises this.

 9          We can hold these hearings like this as a status

10    conference, I mean, without clients.  Now, a hearing on

11    a motion to suppress is a little different.  Even though

12    I -- and no one is pressing me, I'm not going to take

13    evidence, I will have read the briefs, I'll be prepared

14    for argument.

15          So, raise your hand, who has clients in custody

16    here? (Counts.)  1, 2, 3, 4.  So for the rest of you,

17    they're welcome, because they can get here on their own,

18    but they're not required to be here.  For the ones who

19    are in custody, I don't imagine that Mr. Burke needs to

20    be here --

21          Correct, Mr. Connolly?

22               MR. CONNOLLY:  Correct, your Honor.

23               THE COURT:  Do the rest of you, any of you,

24    press that your clients be here?

25               MR. McCORMICK:  Your Honor, Edward McCormick

1    for Mr. Kinney.  Your Honor, I plan to see Mr. Kinney

2    tomorrow, could I inform the clerk of that then?

3              THE COURT:  Precisely.

4         Ms. Feldman-Rumpler?

5              MS. FELDMAN-RUMPLER:  On behalf of Michael

6    Roy, I think he should be here.

7              THE COURT:  We'll see that he is.  And there

8    was one other?

9              MR. PALMER:  Brian Chisholm, your Honor.  I

10   have the same request.

11             THE COURT:  You check with him and let

12   Ms. Gaudet know.

13             MR. DEMISSIE:  Your Honor, I'm standing in for

14   Mr. Kevin Barron.  I'm not sure if Mr. Akasa is in

15   custody.  If he is, then I'll reserve the Attorney's

16   right to let Ms. Gaudet know.

17             THE COURT:  And it's fine if you do it that

18   way.  Thank you, all.  We'll recess.

19             (Ends, 3:30 p.m.)

20

21

22

23

24

25

1                    C E R T I F I C A T E

2

3

4        I, RICHARD H. ROMANOW, OFFICIAL COURT REPORTER,

5   do hereby certify that the foregoing record is a true

6   and accurate transcription of my stenographic notes,

7   before Judge William G. Young, on Thursday, February 6,

8   2014, to the best of my skill and ability.

9

10

11  /s/ Richard H. Romanow 07-08-14
    _____
12  RICHARD H. ROMANOW  Date

13

14

15

16

17

18

19

20

21

22

23

24

25